**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT of TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **JUAN LUIS CABALLERO,** § <br> **TDCJ # 1501352,** § <br> § <br>         **Petitioner** § <br> § <br> v. § <br> § <br> **RICK THALER,** § <br> **Texas Department of Criminal Justice** § <br> **Correctional Institutions Division Director,** § <br> § <br>         **Respondent** § | **Civil Action** <br> **No. SA-11-CA-392-XR** |

**MEMORANDUM DECISION**

Petitioner Juan Luis Caballero has filed a 28 U.S.C. § 2254 habeas corpus petition challenging his conviction and sentence for burglary of a habitation with intent to commit sexual assault.

**I.  Background**

Petitioner was convicted of burglary of a habitation with intent to commit sexual assault in cause number 2006CR10255 in the 175th District Court of Bexar County, Texas. A jury found Petitioner guilty, and Petitioner received a sixty-year sentence. Petitioner was also convicted of burglary of a habitation with intent to commit theft, but that conviction was set aside on appeal. *Caballero v. State*, No. 04-08-00278-CR (Tex. App. — San Antonio 2009). Petitioner's conviction for burglary of a habitation with intent to commit sexual assault was affirmed on appeal. *Id*. The Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review in PDR No. 849-09. The Court of Criminal Appeals denied Petitioner's state habeas corpus application pursuant to Tex. Code Crim. Proc. art. 11.07 in WR-26,962-08 without written order.

## II. Standards of review

Federal habeas corpus relief is available only where the petitioner demonstrates he is in custody in violation of his constitutional or other federal rights. 28 U.S.C. §§ 2241, 2254. State law errors that do not implicate constitutional rights are not a basis for habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rule 2(d) of the Rules Governing § 2254 Proceedings states the petition "shall set forth in summary form the facts supporting each of the grounds." Conclusory and speculative allegations are not sufficient to entitle a petitioner to relief in a § 2254 case. *West v. Johnson*, 92 F. 3d 1385, 1398-99 (5th Cir. 1996); *Perillo v. Johnson*, 79 F. 3d 441, 444 (5th Cir. 1996). A petitioner must exhaust available state court remedies before seeking federal habeas corpus relief. § 2254(b)(1)(A).

A state prisoner may not obtain relief with respect to a claim adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to or involved an unreasonable application of clearly-established federal law, as announced by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be unreasonable, the state decision must be more than merely incorrect or erroneous. *See Lockyer v. Andrade*, 123 S. Ct. 1166, 1174 (2003). Rather, the state court's application of clearly established law must be objectively unreasonable. *Id.* The petitioner bears the burden of proving entitlement to habeas relief. *Williams v. Taylor,* 529 U.S. at 403; *Orman v. Cain*, 228 F.3d 616, 619 (5th Cir. 2000). Factual determinations of a state court are presumed to be correct and the petitioner has the

burden of rebutting this presumption by clear and convincing evidence. § 2254(e)(1).

### III. Petitioner's grounds

Petitioner raises the following grounds:

1. Insufficient evidence to prove intent to commit sexual assault;

2. Denial of right to speedy trial;

3. Introduction of extraneous offense evidence;

4. Perjured testimony by complainant;

5. Trial court lacked subject matter jurisdiction, because there was no evidence of intent to commit sexual assault;

6. Factual insufficiency of evidence to prove intent to commit sexual assault;

7. Trial court raised pretrial bail amount, and trial court denied motions without pretrial hearings;

8. Trial court did not compel the State to elect a count;

9. Ineffective assistance of appellate counsel for failing to raise the grounds Petitioner raised in his state habeas corpus application;

10. Violation of confrontation clause.

Respondent states Petitioner's grounds are exhausted.

### IV. Sufficiency of evidence

In grounds one and six, Petitioner contends there was insufficient evidence to prove he had the intent to commit sexual assault. In determining whether the evidence is sufficient, the test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

The Supreme Court has described federal habeas review of a state-court decision in the

context of a claim of insufficient evidence as a "twice-deferential standard." *Parker v. Matthews*, 132 S. Ct. 2148, ___, 2012 WL 2076341 at **3-4 (2012).

> "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial," *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). The evidence is sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). And a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the "decision was "objectively unreasonable." *Cavazos, supra*, at ___, 132 S. Ct. at 4.

*Parker v. Matthews*, 132 S. Ct. at ___, 2012 WL 2076341 at *3.

"[*Jackson v. Virginia*] also unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' [*Jackson v. Virginia*, 443 U.S.] at 326, 99 S.Ct. 2781." *Cavazos v. Smith*, 132 S. Ct. at 6. "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.' [*Jackson v. Virginia*, 443 U.S.,] at 319, 99 S.Ct. 2781." *Coleman v. Johnson*, 132 U.S. 2060, 2064 (2012). Ultimately, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Id*. If the state court determines the jury's finding was rational, that determination is entitled to "considerable deference" under § 2254(d). *Id*.

In finding the evidence was sufficient, the Fourth Court of Appeals set out the following evidence.

> The victim, Courtney Mann, lived in San Antonio, Texas with her two children. Approximately nine months after moving into her home, Mann began to see Caballero walking past her residence. Caballero initiated contact with Mann on April 6, 2006, while she was in her yard. The record reflects that Mann was in her yard picking up a rake when she heard a man's voice say, "don't work too hard."

(Footnote 1 - At the time of the contact, Mann was wearing running shorts and an exercise top over a bathing suit.)  Mann, who was startled by the man's voice, screamed.  When Mann turned around to see who was behind her, she observed Caballero standing eight feet away.  Cabellero told Mann to have a nice day and walked away.

The next day, on April 7, 2006, Mann noticed Caballero outside her home. Caballero, who was staring at Mann's residence and pacing back and forth, approached the home and peered into Mann's window.  Caballero stared through the window at Mann for approximately 15 seconds before he left Mann's property.

Mann fell asleep on the living room couch that night. Mann was awakened from her sleep, however, by the sound of footsteps inside her home.  Shortly thereafter, Mann saw Caballero in her living room. Mann observed Caballero go into her kitchen and heard him lock the back door to the house.  When he returned to the living room, Caballero was carrying a knife and a brown bag containing two bottles of champagne.

Mann, who was unable to complete a call to 911, jumped up from where she was lying and started to scream.  Mann called for help and told Caballero that he did not belong inside her home.  Caballero grabbed Mann's left arm and asked Mann if she wanted to have a drink.  Mann responded by punching Caballero in the face and kicking him in the legs.

As Mann tried to escape, Caballero came at her and told her "wait, wait, it's going to be okay."  Caballero continued to grab at Mann, but she kept throwing punches at him.  When Mann reached her front door, she grabbed a baseball bat and struck Caballero on the back of his head.  Caballero ran into Mann's front yard and collapsed.  Mann immediately ran back inside her home and called 911.  Caballero fled before the police could respond.

Mann gave the police Caballero's description, and officers apprehended Caballero a short while later when a police search dog found Caballero in a nearby shed, hiding under a mattress.  Mann positively identified Caballero as the intruder in her home.  (Footnote 2 - Caballero maintained that he was injured in a bar fight and that he had mistakenly entered Mann's home, thinking the home belonged to his friend.)

*Caballero v. State*, slip op. at 2-3.

Petitioner claims the evidence is legally and factually insufficient.  He asserts the evidence that he grabbed Mann, he asked her if she wanted a drink of his champagne, and he looked through her home window does not show an intent to commit sexual assault.  Petitioner contends he did not

say, do, or attempt anything of a sexual nature. He claims that he held onto a grocery bag containing champagne bottles. He claims he would not have taken a bag into the house if he intended to commit sexual assault. Mann testified Petitioner had a knife in one hand and the bag in the other. Petitioner contends that his hands were rendered useless, so he could not have committed a sexual assault. Actually, Mann testified Petitioner was not holding the bag with his hand. Instead, the plastic grocery bag was looped over his wrist.

The state court addressed Petitioner's claim of insufficient evidence as follows.

> A person commits burglary if, without the effective consent of the owner, he enters a habitation with the intent to commit a felony, theft, or an assault. Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003). The indictment charged Caballero with having entered Mann's habitation with intent to commit sexual assault, which is a felony. *Id*. § 22.011(f). A person commits the offense of sexual assault if he intentionally or knowingly "causes the penetration of the anus or sexual organ of another person by any means, without that person's consent; causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor." *Id*. at (a).
>
> Intent is an essential element of the offense of burglary, which the State must prove beyond a reasonable doubt. *LaPoint v. State*, 750 S.W.2d 180, 182 (Tex.Crim.App.1986); *Coleman v. State*, 832 S.W.2d 409, 413 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd). A defendant's intent to commit a felony must exist at the time of and accompany the entry into the habitation. *Conrad v. State*, 154 Tex.Crim. 624, 230 S.W.2d 225, 226 (1950). The jury is exclusively empowered to determine the issue of intent, and the events of a burglary may imply the intent with which the burglar entered. *Coleman*, 832 S.W.2d at 413. A defendant's intent to commit an offense "maybe inferred from [his] acts, words and conduct." *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App.1991).
>
> Caballero argues the evidence is legally and factually insufficient to show his intent to sexually assault Mann because there was no sexual connotation to his interaction with the complainant. Caballero asserts his conviction cannot stand because there is no evidence demonstrating he: (1) exhibited his genitals to Mann; (2) verbally indicated to Mann that he wanted to engage in sexual intercourse; (3) removed his clothing; (4) removed or attempted to remove Mann's clothing; or (5) touched Mann's genitals. However, such evidence is not necessary to support a finding of intent to commit sexual assault. *See Johnson v. State*, 397 S.W.2d 424,

>  425–26 (Tex.Crim.App.1966) (concluding evidence was sufficient to support conviction for assault with intent to rape where defendant locked doors to prevent others from entering house, said nothing, held the complainant very tightly with a knife at her throat, and shoved complainant onto a couch several times before fleeing).
>
>  The evidence in this case shows Caballero was seen around Mann's residence on multiple occasions, including the day before the burglary when Caballero was observed pacing outside Mann's home and peering into a window. The record reveals Caballero entered Mann's residence at nighttime (with two bottles of champagne), locked the doors to the home from the inside, and armed himself with a kitchen knife. When Mann confronted Caballero about his presence in her home, Caballero did not attempt to flee. Instead, Caballero grabbed Mann and asked her whether she wanted to have a drink with him. The record further shows Caballero tried to stop Mann from escaping and aggressively pursued her when she tried to get away from him. Having reviewed all the evidence, we hold there is legally and factually sufficient evidence from which the jury could have reasonably inferred Caballero intended to sexually assault Mann. *See Johnson*, 397 S.W.2d at 425–26. Accordingly, we overrule Caballero's issues challenging the sufficiency of the evidence.

*Caballero v. State*, slip op. at 4.

Petitioner testified to the following. He did not remember meeting Mann on the day before the offense. He never looked into her window. Petitioner said he was walking from a bar to the house of a friend, Jorge Gonzalez, who lived in the area. He thought he was going into Jorge's house. He said the door to the house was partially open, the television was on, and he automatically thought it was his house. Petitioner said he walked into the house, said "Jorge, I'm here. I have champagne. Do you want a drink," and then set the bag on the floor. As soon as he set the bag down, he heard a woman screaming. Petitioner picked up his bag and went to the front door, which was still open, but Mann got to the front door before him. Mann was yelling. Petitioner put his hands up and backed up. Mann was scratching him. Petitioner squeezed by Mann, held his hands up, and said he was sorry, he had the wrong place, and he was out of there. Petitioner did not remember and did not think Mann hit him with a baseball bat. If she did hit him with the bat, it was

not six times. Regarding being hit on the head, Petitioner testified that earlier that evening when he was leaving the bar, two or three men approached him, and he was hit over the head with what he believed was the butt of gun. Petitioner ran from Mann's house. Petitioner did not go anywhere in the house beyond six to ten feet in the middle of the house. He did not ask her if she wanted a drink, he had only previously asked that for Jorge when Petitioner went in the house. Petitioner said he did not touch or push Mann. Petitioner did not touch any knife in Mann's house. Petitioner intended to enter Jorge's house, and he did not intend to commit sexual assault.

Petitioner argues Mann testified at trial that Petitioner grabbed her, but she did not state to the police that she had been grabbed. Petitioner contends that Mann's testimony that Petitioner pushed her, was out, and was still grabbing her shows Petitioner was trying to get out of the house and that any grabbing by Petitioner would have been to protect himself from Mann's unprovoked assault. Petitioner suggests innocent reasons for his actions.

"All credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). Here, credibility determinations were a matter for the jury. The jury could have believed some or all of Mann's testimony, and the jury could have disbelieved Petitioner's testimony. Petitioner claims he was trying to get out of the house, which would not be surprising since Mann testified she was hitting him with a baseball bat. But that does not mean he did not enter the house with intent to commit sexual assault. Mann's testimony shows Petitioner did not immediately try to leave, as he testified he did when he discovered he mistakenly entered the wrong house. Instead, Mann's testimony was that Petitioner locked the back door, got a knife from the kitchen, and tried to offer Mann a drink. According to Mann's testimony, Petitioner did not leave until he was beaten with a bat.

Intent can be inferred from the defendant's words, acts, and conduct. *Brewer v. Quarterman*, 475 F.3d 253, 258 (5th Cir. 2006). The evidence in the light most favorable to the verdict showed Mann was doing yard work in running shorts and an exercise shirt over a swimsuit when Petitioner

addressed her. The next day, Petitioner paced outside Mann's home, he approached her home, and he peered into Mann's window for about fifteen seconds. Petitioner entered Mann's home that night. Petitioner went into Mann's kitchen and locked the back door to the house. Petitioner returned to the living room, carrying a knife and a brown bag containing two bottles of champagne. Mann screamed, called for help, and told Petitioner he did not belong in her home. Petitioner grabbed Mann's arm and asked Mann if she wanted to have a drink. Mann punched Petitioner in the face and kicked him in the legs. As Mann tried to escape, Petitioner came at her and told her "wait, wait, it's going to be okay." Petitioner continued to grab at Mann, but she kept throwing punches at him. When Mann reached the front door, she grabbed a baseball bat and struck Petitioner on the back of his head. Petitioner ran into Mann's front yard and collapsed, but he fled before the police arrived. Based on Mann's description of Petitioner, officers apprehended him a short while later when a police search dog found Petitioner in a nearby shed, hiding under a mattress.

Petitioner has not shown that the state court unreasonably determined, after viewing the evidence in the light most favorable to the prosecution, that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

## V. Speedy trial

In ground two, Petitioner contends he was denied his right to a speedy trial. To determine whether a criminal defendant's Sixth Amendment right to a speedy trial has been violated courts consider and balance the following four factors: the length of the delay; the reason for the delay; whether the defendant diligently asserted his speedy trial right; and prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). The right to a speedy trial attaches at the time of arrest or indictment, whichever comes first. *Amos v. Thornton*, 646 F.3d 199, 206 (5th Cir. 2011).

Petitioner previously sought pretrial habeas corpus relief in this Court on a speedy trial issue in No. SA-07-CA-827. Petitioner relies on an observation by the Magistrate Judge in the

Memorandum and Recommendation, which was accepted by the District Judge, that Petitioner has not been provided a prompt trial. No. SA-07-CA-827 (Docket Entry No. 29 at 5). There is no question that the trial was not prompt. But the lack of a prompt trial does not necessarily mean a violation of the constitutional right to a speedy trial. The issue is whether the state court unreasonably concluded that Petitioner had not shown he was denied his constitutional right to a speedy trial.

Petitioner was arrested on April 7, 2006, and he was indicted in June 2006 and reindicted on November 30, 2006. Jury selection occurred April 15, 2008, and he was sentenced April 18, 2008. The delay of more than one year requires a speedy trial analysis under *Barker*. *Amos v. Thornton*, 646 F.3d at 206.

Regarding the length of delay, the delay of two years weighs in Petitioner's favor. But, a delay must persist for at least two and one-half years for the factor to strongly favor the accused. *Id*. at 206-07.

Regarding assertion of the right, Petitioner filed numerous motions for a speedy trial. So, he asserted his right to a speedy trial.

Regarding the reason for the delay, the record does not include any requests for continuances. However, Petitioner was represented by three different attorneys. Petitioner's first attorney submitted an affidavit in response to Petitioner's state habeas corpus application. First counsel represented Petitioner from when she was appointed on April 8, 2006, until November 28, 2006, when she withdrew because she closed her law office after winning election to a judicial office. She stated Petitioner did not provide her with any names of witnesses to corroborate where he had been or to provide any other helpful information. First counsel averred Petitioner's case was not ready for trial because counsel was seeking information of his innocence and counsel was relying on the

defense's investigation to provide that information. First counsel stated Petitioner wanted a speedy trial, but his case was never ready for trial while she was his attorney because Petitioner asserted he was innocent and counsel had no reasonable, persuasive evidence to offer at trial or in negotiations.

Petitioner's second counsel represented him until June 25, 2007, when the trial court granted second counsel's motion to withdraw because Petitioner did not want him as counsel and because Petitioner wanted to represent himself. Petitioner also moved to represent himself.

The trial court appointed a third attorney for Petitioner on June 25, 2007. The order noted Petitioner wanted to represent himself and that counsel was appointed to assist Petitioner if he wanted assistance. Shortly before trial, Petitioner decided to be represented at trial by his third counsel. The trial began in April 2008. Third counsel responded to Petitioner's state habeas corpus application. Third counsel averred that until trial, Petitioner could not recall the last name of his mistake of fact defense witness. Petitioner could not provide an address for the witness because the witness was an "illegal alien who moved around a lot."

The record shows Petitioner was represented by three different appointed attorneys, and this Court is well aware that appointment of a new attorney requires additional time for the new attorney to acquaint himself or herself with the defendant, the case, and the record. The trial began less than ten months after his second attorney was removed from the case in accordance with Petitioner's wishes. It would have been reasonable for the state court to conclude the factor regarding the reason for the delay weighed in favor of the State or was neutral in weight.

Regarding prejudice, Petitioner asserts Mann's memory faded. However, nothing indicates Mann's memory had faded. Petitioner asserts he was prejudiced by the delay because he was not able to obtain his mistake-of-fact witness, Jorge Gonzalez. Petitioner states in September 19, 2007, he filed a motion to subpoena defense witnesses, including Jorge Gonzalez. However, Petitioner's

first counsel averred Petitioner did not provide her with any names of witnesses to corroborate where he had been. Petitioner's third counsel averred Petitioner could not provide the name of the witness until trial, and Petitioner did not know Gonzalez's address because the witness moved around a lot. Petitioner has not shown that this witness would have been found and would have been available to testify had there been an earlier trial. Additionally, even if Gonzalez would have supported Petitioner's testimony that Petitioner had been living with Gonzalez in the neighborhood for four days, that would not have undercut the State's case. The cross-examination of Petitioner did not focus on whether Petitioner lived in the area for a short time with Gonzalez. The emphasis was on Petitioner's actions regarding Mann before the offense and his actions when he entered Mann's home. It would have been reasonable for the state court to conclude Petitioner did not show prejudice. Petitioner has not shown that the state court unreasonably determined that he was not denied a constitutional right to a speedy trial.

### VI.  Extraneous offense evidence

In ground three, Petitioner complains of the introduction of extraneous offense evidence. Specifically, Petitioner complains about the introduction of evidence that he had a fourteen-year old sexual assault conviction. Petitioner testified at the guilt-phase, and the State impeached him with a 1994 sexual assault conviction. Petitioner contends that evidence was prejudicial.

The state habeas court found that this ground, and other grounds regarding trial court errors, concerned a matter that should have been raised on direct appeal, so Petitioner was not allowed to raise it on habeas corpus review. It is well settled in Texas that habeas corpus cannot be used to raise claims that could have been raised on appeal. *Ex parte Nelson*, 137 S.W.3d 666 (Tex. Crim. App. 2004); *see also Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2005). Thus, this claim is procedurally barred.

Also, the claim lacks merit. Petitioner claims the admission of the prior conviction for impeachment violated the federal law announced in *Old Chief v. United States*, 519 U.S. 172 (1997). In *Old Chief*, the Supreme Court held that when a prior conviction is an element of the crime charged, evidence of the prior conviction may not be admitted if the defendant concedes the fact he was convicted. However, the Supreme Court's opinion in *Old Chief* involved the Federal Rules of Evidence, not federal constitutional law. *Bugh v. Mitchell*, 329 F.3d 496, 513 (6th Cir. 2003). The Federal Rules of Evidence do not apply to criminal cases in Texas state courts. To the extent that the Texas Court of Criminal Appeals has construed the Texas Rules of Evidence consistent with the Supreme Court's construction of the Federal Rules of Evidence in *Old Chief*, *see Tamez v. State*, 11 S.W.3d 198 (Tex. Crim. App. 2000), that is a state evidentiary matter, not a federal constitutional matter. Therefore it cannot serve as the basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

To the extent Petitioner seeks to argue that the impeachment evidence was so unduly prejudicial that it rendered the trial fundamentally unfair in violation of the Due Process Clause, *see Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir. 2005), the claim lacks merit. Petitioner has not pointed to any Supreme Court case that held impeachment with a prior conviction that is not void violates the right to due process, and this Court is unaware of any such case. Moreover, in the jury charge, the trial court instructed the jury that it could consider acts of misconduct other than the alleged offense only with regard to the impeachment of Petitioner. Therefore, there was no due process violation. Thus, to the extent the state court may not have found this claim to be procedurally barred, Petitioner has not shown that the state court's denial of relief on this claim was unreasonable.

### VII. Perjured testimony by complainant

In ground four, Petitioner contends the State knowingly elicited perjured testimony from Mann. The state habeas court found that this ground, and other grounds regarding trial court errors, concerned a matter that should have been raised on direct appeal, so Petitioner was not allowed to raise it on habeas corpus review. Thus, this claim is procedurally barred. *Ex parte Nelson*, 137

S.W.3d 666; *Brewer v. Quarterman*, 466 F.3d at 347.  Also, the claim lacks merit.

The Government denies a defendant due process when it knowingly uses perjured testimony at trial or does not correct untrue testimony.  *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).  The defendant must show the testimony was false, the government knew it was false, and the testimony was material.  *Id*.   Moreover, contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflict between reports, written statements and the trial testimony of prosecution witnesses do not, standing alone, establish perjury.  *See Koch v. Puckett,* 907 F.2d 524, 531 (5th Cir. 1990) (contradictory testimony from witnesses or inconsistencies in a witness's testimony at trial are to be resolved by the trier of fact and do not suffice to establish that certain testimony was perjured); *United States v. Martinez-Mercado*,  888 F.2d 1484, 1492 (1989) (the omission of certain facts from the reports and written statements of the prosecution's witnesses, standing alone, which merely go to the credibility of the witnesses, an area within the province of the jury, does not establish perjury in fact occurred); and *United States v. Viera*, 819 F.2d 498, 502 (5th Cir. 1987) (inconsistencies between pre-trial and in-trial testimony do not, standing alone establish perjury or put the prosecution on notice of possible perjury).

Any contradictions between Mann's testimony and statements to the police, and Petitioner's assertion that he could not have grabbed Mann while holding a knife in one hand and a bag in the other, although Mann testified Petitioner had the bag looped over his wrist or arm, do not establish the State knowingly used perjured testimony.  Thus, to the extent the state court may not have found this claim to be procedurally barred, Petitioner has not shown that the state court's denial of relief on this claim was unreasonable.

## VIII.  Lack of subject-matter jurisdiction

In ground five, Petitioner contends the trial court lacked subject-matter jurisdiction, because there was no evidence of intent to commit sexual assault.  The state habeas court found that this ground, and other grounds regarding trial court errors, concerned a matter that should have been raised on direct appeal, so Petitioner was not allowed to raise it on habeas corpus review.   Thus,

this claim is procedurally barred. *Ex parte Nelson*, 137 S.W.3d 666; *Brewer v. Quarterman*, 466 F.3d at 347. Also, the claim lacks merit.

As stated elsewhere in this Memorandum Decision, Petitioner has not shown the state court unreasonably determined there was sufficient evidence to support the jury's finding that Petitioner intended to commit sexual assault. Furthermore, Petitioner has not shown that the sufficiency of evidence offered by the State affects the trial court's jurisdiction over the case as a matter of federal constitutional law. Thus, to the extent the state court may not have found this claim to be procedurally barred, Petitioner has not shown that the state court's denial of relief on this claim was unreasonable.

### IX. Trial court raised pretrial bail amount and denied motions without hearings

In ground seven, Petitioner complains that the trial court raised his pretrial bail amount and that the trial court denied motions without hearings. The state habeas court found that this ground, and other grounds regarding trial court errors, concerned a matter that should have been raised on direct appeal, so Petitioner was not allowed to raise it on habeas corpus review. Thus, this claim is procedurally barred. *Ex parte Nelson*, 137 S.W.3d 666; *Brewer v. Quarterman*, 466 F.3d at 347. Also, the claim lacks merit.

Petitioner was convicted, so any claim of excessive pretrial bail is moot. *Murphy v. Hunt*, 455 U.S. 478, 481-82 (1982). Regarding pretrial motions, Petitioner has not shown that a hearing would have made any difference to the ruling on his pretrial motions. Petitioner has not shown that his pretrial motions had merit, such that the trial court denied his constitutional rights by denying them. Petitioner has not shown how he was harmed by the denial of his pretrial motions. Thus, to the extent the state court may not have found this claim to be procedurally barred, Petitioner has not shown that the state court's denial of relief on this claim was unreasonable.

### X. Trial court did not compel the State to elect a count

In ground eight, Petitioner contends the trial court did not compel the State to elect a count on which to seek a conviction, in violation of his right to be free from double jeopardy. The state

habeas court found that this ground, and other grounds regarding trial court errors, concerned a matter that should have been raised on direct appeal, so Petitioner was not allowed to raise it on habeas corpus review. Thus, this claim is procedurally barred. *Ex parte Nelson*, 137 S.W.3d 666; *Brewer v. Quarterman*, 466 F.3d at 347. Also, the claim lacks merit.

On appeal, the Fourth Court of Appeals set aside a conviction for one of the two counts. Because Petitioner is in custody for a conviction and sentence under only one count, he is not presently confined in violation of the Double Jeopardy Clause. Additionally, for the same reason, any error in the trial court has been rendered harmless. Thus, to the extent the state court may not have found this claim to be procedurally barred, Petitioner has not shown that the state court's denial of relief on this claim was unreasonable.

## XI. Ineffective assistance of appellate counsel

In ground nine, Petitioner contends appellate counsel rendered ineffective assistance of counsel for failing to raise the grounds Petitioner raised in his state habeas corpus application.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established a two-prong standard for ineffective assistance of counsel claims. First, a petitioner must demonstrate that his counsel's performance was deficient and, second, that the deficient performance prejudiced the defense. To show that the performance was deficient, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. To establish ineffective assistance of appellate counsel, a petitioner must show that "counsel unreasonably failed to discover [and raise] nonfrivolous issues." *Smith v. Robbins,* 528 U.S. 259, 285 (2000). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Id.* at 288 (citing *Jones v. Barnes,* 463 U.S. 745 (1983)). Thus, it is possible that an ineffectiveness claim may be "based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Id.* (citing *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)).

To establish prejudice, the petitioner "must show a reasonable probability that, [but for counsel's error], he would have prevailed on appeal." *Id.* at 285-86 (citing *Strickland,* 466 U.S. at 694). To do this, he must show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Id.* at 288.

Petitioner fails to argue in his § 2254 petition how the twenty-three grounds he raised in his state habeas corpus application would have had merit on appeal. Petitioner's § 2254 petitioner merely refers to his state habeas corpus application. In response to Respondent's answer, Petitioner only argues that appellate counsel should have raised an issue about the failure of the State to elect a count and the double jeopardy ramifications. He contends the appellate court had to order appellate counsel to brief the double jeopardy violation.

Appellate counsel's supervising attorney submitted an affidavit thoroughly answering Petitioner's allegations in the State writ application. Counsel stated that a number of issues about which Petitioner complained were not raised on appeal because the issues were not properly preserved or because there was no legal basis for the claims.

Other than the issue of appellate counsel's failure to brief the State's failure to elect a count, Petitioner's claim regarding the other issues not briefed by appellate counsel is conclusory. Petitioner makes no attempt to argue how his other issues had merit, other than to refer to his state writ application. On those other issues not briefed by appellate counsel, Petitioner has not shown the state court unreasonably concluded he failed to show he received ineffective assistance of counsel on appeal.

On the issue of the State's failure to elect a count, appellate counsel stated there were strategic reasons for not briefing that issue on appeal initially. Moreover, the issue was ultimately briefed and Petitioner obtained relief. Therefore, he was not prejudiced. Thus, Petitioner has not demonstrated the state court unreasonably denied his claim of ineffective assistance of appellate counsel.

### XII. Violation of confrontation clause

In ground ten, Petitioner contends there was a violation of the confrontation clause for reasons stated in his state writ application. The state habeas court found that this ground, and other grounds regarding trial court errors, concerned a matter that should have been raised on direct appeal, so Petitioner was not allowed to raise it on habeas corpus review. Thus, this claim is procedurally barred. *Ex parte Nelson*, 137 S.W.3d 666; *Brewer v. Quarterman*, 466 F.3d at 347. Also, the claim lacks merit.

This claim is conclusory, because Petitioner makes no attempt to set out the factual basis of his claim, and he does not argue how the state court's denial of this claim was unreasonable.

Although Petitioner's § 2254 petition refers to confrontation clause violations at the guilt and punishment phases, Petitioner's state habeas corpus application, to which he refers, only complained of a confrontation clause violation at the punishment phase. Petitioner asserted in his state application that there was evidence that an employee of the Texas Department of Criminal Justice claimed in a disciplinary case that Petitioner told the employee, "I will get you. I will get you. Any way it takes I will get you. I bet your old lady does [derogatory word for African-Americans]." Petitioner's sister testified for Petitioner at the punishment phase. The prosecutor asked her whether she had heard about, or whether Petitioner had told her about, Petitioner's having said these things to the TDCJ employee. She said she had not heard or been told that. Petitioner testified at the punishment phase. When he was asked about his statements to the TDCJ employee, Petitioner admitted he said those things.

Admission of a defendant's own statement does not violate the Confrontation Clause. *United States v. Brown*, 441 F.3d 1330, 1358-59 (11th Cir. 2006). Even if it could violate the Confrontation Clause, Petitioner testified and admitted he made the statements. Therefore, he was able to "confront" himself. Thus, to the extent the state court may not have found this claim to be procedurally barred, Petitioner has not shown that the state court's denial of relief on this claim was unreasonable.

## XIII.

Accordingly, Petitioner's habeas corpus petition is **DENIED,** and this case is **DISMISSED.** All other pending motions are **DENIED**.

For the reasons set out in this Memorandum Decision, Petitioner fails to make "a substantial showing of the denial of a federal right" as required by 28 U.S.C. § 2253(c)(1)(A) and Fed. R. App. P. 22 for a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *see also* Rules Governing Section 2254 Cases. Also for the same reasons, Petitioner does not have a "good faith" non-frivolous issue for appeal as required for leave to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3). Accordingly, Petitioner is **DENIED** a certificate of appealability and **DENIED** leave to proceed in forma pauperis on appeal.

It is so ORDERED.

SIGNED this 25th day of July, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE